# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **WILLIAM EPHRAIM,** | )<br>) |
| Petitioner, | )<br>) |
| v. | ) No. 06 C 4085<br>) |
| **ROGER ZIMMERMAN,** | )<br>) |
| Respondent. | )<br>) |

## MEMORANDUM OPINION AND ORDER

William Ephraim has brought a petition pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. Ephraim is currently in the custody of the State of Illinois Department of Corrections, incarcerated at the Warden Hill Correctional Center. I deny his petition.

I.

Two-year-old Tiara Moren and four-year-old Andrew White were shot as a result of a drive-by shooting on April 10, 1996, on Chicago's southside. Police talked to eye-witnesses that day, some of whom provided different sets of stories. One set of witnesses, including Terrice Hartfield and Benjamin Navarro, told police they saw a white Pontiac Grand Prix around the time that shots rang. Hartfield recalled the Pontiac Grand Prix had a gray bottom and was chasing another car. Navarro recalled the car did not have license plates, but did have an orange sticker in the back window and that the driver was a black male.

The second set of witnesses, consisting of Antoinette Muhammad, Nicole Muhammad, Jason Miller and Anthony Blanch, told police they saw a black, four-door car with gold rims chasing another vehicle. Miller and Blanch further identified the shooter as one "Eric," a member of the Black P Stones street gang, and gave police his address. Miller and Blanch later identified a person named Eric Gibson out of photo and traditional line-ups. Gibson, who had previously cooperated with police on a different investigation, owned a dark blue, four-door car with gold rims. Antoinette and Nicole Muhammad, the 16-year-old sisters of one of the victims, were not able to identify Gibson from any type of line-up. Nicole Muhammad did tell police that she saw a person in the back passenger seat of the car shooting out of the window. Antoinette Muhammad said she saw a person in the front passenger side sitting up on the window ledge with his upper part of the body out of the car and shooting.

Police attempted to reconcile the two sets of witness accounts. Upon re-interviewing Miller and Blanch, both witnesses admitted that they lied when they identified the dark blue car and Gibson as the shooter. According to police, Blanch said that Gibson was not present at the shooting. When Antoinette and Nicole Muhammad were confronted with Miller and Blanch's recantations, they refused to speak to police again. Miller would later testify that Nicole Muhammad was his girlfriend at the time of the

shooting. Detective Holloran would later testify about these witnesses' initial statements and subsequent recantations at trial.

As police continued to investigate the case, they learned that an individual nicknamed "Big Man" may have been involved in the shooting. On April 16, 1996, police officer Thomas Glynn observed petitioner driving a white, two-door Pontiac Grand Prix with an orange sticker in the rear window. Officer Glynn approached petitioner and asked him if he went by a nickname, and petitioner responded "Big Man." Petitioner was taken into custody; he was 17 years old at the time. Detective Halloran and his partner first spoke with petitioner after he had been taken into custody at approximately 5:30 p.m. Petitioner initially denied any involvement in the shooting and Detective Halloran told petitioner about the evidence in the case. Within approximately one hour, Ephraim admitted his involvement in the shooting and that he is known as Big Man and is a member of the Black P Stones gang.

Petitioner gave a second confession. Detective Halloran re-interviewed petitioner, but this time alongside Assistant States' Attorney Dan Weiss. This interview occurred at approximately 10:45 p.m. and lasted approximately 20-30 minutes; petitioner was read his Miranda rights. He told Detective Halloran and Assistant State's Attorney Weiss about his involvement in the shooting. Petitioner saw his attorney the following day, and refused to give any more interviews with police on the advice of counsel.

3

At trial, Detective Halloran and Assistant State's Attorney Weiss testified about petitioner's confessions. According to them, petitioner said that on April 10, 1996 he was ordered by another gang member to stop the car of a rival gang member, so he jumped into his car and began following the gray car while he simultaneously fired a .32 caliber gun out the driver's side window. Detective Halloran and Assistant State's Attorney Weiss each testified that petitioner said he remembered seeing children on the street when he fired the gun.

The defense's only witness was Mary Williams, petitioner's mother. She testified that on April 10, 1996, her son worked at a dollar store with her from 3 p.m. until 7 p.m. Williams conceded that she owned a Pontiac Grand Prix, which her son was seen driving, but said that on the day of the shooting her sister had the car.

Petitioner was convicted of two counts of attempted murder and two counts of aggravated battery with a firearm following a jury trial in the Circuit Court of Cook County. He is serving two consecutive 20-year term sentences. On direct appeal, petitioner raised the following five claims: (1) the trial court's decision to deny petitioner's request to excuse two potential jurors for cause was against the manifest weight of the evidence; (2) the doctrine of transferred intent should not have applied to petitioner's convictions for attempted murder where the unintended victims were

not killed; (3) the State failed to prove beyond a reasonable doubt that petitioner committed attempted first-degree murder; (4) the cause must be remanded for a further postrial hearing because the trial court failed to *sua sponte* examine an allegation of ineffective assistance of counsel (for failing to call Patricia Hodges as a witness); and (5) *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies to his case because the trial court imposed mandatory consecutive sentences. The Illinois appellate court rejected petitioner's arguments and affirmed. *People v. Ephraim*, 323 Ill. App. 3d. 1097, 753 N.E.2d 486 (2001). Petitioner then filed a petition for leave to appeal (PLA) in the Illinois Supreme Court raising claims 2-5 which were raised in his direct appeal. On December 5, 2001, the court denied the PLA. *People v. Ephraim*, 197 Ill. 2d 570, 763 N.E.2d 773 (2001).

Petitioner filed an initial petition for relief pursuant to the Illinois Post-Conviction Hearing Act on February 7, 2002. On December 16, 2002, petitioner filed an amended post-conviction petition, which asserted trial counsel was ineffective for (1) failing to call a necessary witness, namely Patricia Hodges, petitioner's employer; (2) conducting inadequate investigation of necessary witnesses, namely Antoinette and Nicole Muhammad, and Elizabeth Young; (3) failing to subpoena necessary witnesses for trial, namely Antoinette and Nicole Muhammad; (4) failing to prove petitioner's alibi defense because he failed to present Patricia

5

Hodges or employment records, and (5) failing to seek a continuance to allow witnesses to appear, that had failed to respond to subpoenas. On July 7, 2003, the circuit court denied the petition. On appeal petitioner raised the following four claims: (1) trial counsel was ineffective for failing to call Antoinette and Nicole Muhammad as witnesses at trial and failing to call Patricia Hodges as a witness at trial; (2) appellate counsel was ineffective for failing to claim ineffective assistance of trial counsel for failing to call Patricia Hodges as a witness; (3) post-conviction counsel was ineffective for (a) failing to attach Antoinette and Nicole Muhammad's affidavits to his amended post-conviction petition, (b) failing to allege that his arresting officers were under investigation for misconduct; (c) failing to allege ineffective assistance of trial and appellate counsel for failing to claim improper admission of evidence and improper closing argument; (d) *Apprendi* applies to his case because the trial court imposed mandatory consecutive sentences. On March 31, 2005, the Illinois appellate court affirmed the judgment denying petitioner's post-conviction petition. *People v. Ephraim*, No. 1-03-3638, at 11-12 (Ill. App. Ct. Mar. 31, 2005). Petitioner filed a PLA in the Illinois Supreme Court claiming that he received ineffective assistance of trial counsel for failing to call witnesses Patricia Hodges, Antoinette Muhammad, and Nicole Muhammad at trial. On September 29, 2005, the court denied the PLA. *People v. Ephraim*,

216 Ill. 2d 704, 839 N.E.2d 1029 (2005).

Petitioner presently raises eight claims in his petition under § 2254: (1) ineffective assistance of trial counsel for failing to call Hodges as an alibi witness at trial; (2) ineffective assistance of trial counsel for failing to call Antoinette and Nicole Muhammad at trial; (3) ineffective assistance of appellate counsel for failure to assert ineffective assistance of trial counsel for failure to call Hodges as an alibi witness; and ineffective assistance of post-conviction counsel for failure to (4) attach affidavits from Antoinette and Nicole Muhammad to the petition; (5) argue that the custodial interrogation was coercive; (6) argue ineffective assistance of appellate counsel for failure to argue the insufficiency of the evidence; (7) assert ineffective assistance of appellate counsel for failure to brief several evidentiary matters; and (8) argue ineffective assistance of appellate counsel for failure to raise an issue of prosecutorial misconduct. Attached to Ephraim's petition are 12 affidavits from petitioner himself, William Blanche, James Harris, Terrence Hartfield, Kylin Little, Antoinette Muhammad, Halimah Muhammad, Nicole Muhammad, Patricia Hodges, Joan Hill-McClain, Maurice Randolph, and Angelica Small. Petitioner also attached a newspaper article dated December 17, 2001.[1]

---

[1]Petitioner is presently represented by counsel.

II.

The federal statute which governs petitions for writs of habeas corpus, 28 U.S.C. § 2254, provides a "highly deferential standard of review." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citing *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). This standard requires that I give state court decisions the benefit of the doubt, only intervening where a state court decision is "objectively unreasonable." *Woodford*, 537 U.S. at 24-27. Under the terms of § 2254, I may grant a petition for habeas corpus only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence" presented during the state court proceedings. 28 U.S.C. § 2254(d).

In addition to this deferential standard, I generally may only grant a petition for a writ of habeas corpus where "the applicant has exhausted the remedies available in the courts of the State" and where the applicant has not procedurally defaulted his claims. 28 U.S.C. § 2254(b)(1)(A); *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991).[2] These limitations are intended to allow state courts

---

[2] Section 2254 also provides, however, that I may deny a writ of habeas corpus on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

8

a fair opportunity to hear and act on a petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). Procedural default may occur where the petitioner did not comply with state procedural requirements during his appeals in state court such that the state court found these failures to be an "independent and adequate" state law ground for denying his claim. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). When a state court relies on a state procedural ground to avoid reaching the merits of a petitioner's claim, that ground must be clearly and expressly relied upon and must be firmly established and regularly followed. *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000).

To avoid procedural default, a petitioner must, at minimum, "invok[e] one complete round of the State's established appellate review process" for each of his claims. *O'Sullivan*, 526 U.S. at 845. In Illinois, this means one full round of appeals up to and including the filing of a petition for leave to appeal to the Illinois Supreme Court. *Id.* at 845-46; *see also Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (requiring a claim to be raised through one full round of appeals, either on direct appeal of the petitioner's conviction or through post-conviction proceedings, to avoid procedural default).

III.

A. Claims 1 and 2: Ineffective assistance of trial counsel for failure to call Hodges, Antoinette Muhammad, and Nicole Muhammand.

To establish an ineffective assistance of counsel claim, Ephraim must show that his counsel's performance fell below an objective standard of reasonableness and that he suffered substantial prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 674 (1984). Petitioner first claims trial counsel was ineffective because she failed to call Hodges as an alibi witness. In her affidavit, dated December 14, 2001 and submitted along with petitioner's state post-conviction appeal, Hodges states

> At the time of the trial I was unaware that it was occurring . . . . I [] told the defendant and his mother, who were my employees at the time of the alleged crime that I would be a witness, but lost touch in the interim due to the illness of the defendant's mother. I would have testified that on the day and time in question, I [] picked the defendant up and brought him to work at my shop, so that it was physically impossible for him to be able to commit the crime. However, the lawyer for the defendant did not continue the case to locate me so that I could testify on [petitioner's] behalf.

Hodges did manage to testify on petitioner's behalf at the sentencing hearing held on February 9, 1999. She testified that on the day of the shooting, she picked defendant up from school around 3 p.m. and brought him to the dollar store where he was scheduled to work until 7 p.m. Hodges also testified she was not in the store the entire time that petitioner was purportedly working, and could not verify that he was there from 3 p.m. until 7 p.m. Hodges

10

said that on the day of the shooting she was "in and out" of the store because of her second business transporting people to obtain non-emergency medical treatment. Her time sheet reflected that she billed five hours for transportation that day. She also testified that although she was subpoenaed to testify during the trial, she had failed to comply with her subpoena. Hodges could not recall the reason why she had failed to appear at the trial.

The Illinois appellate court concluded petitioner failed to meet either prong of *Strickland*. *People v. Ephraim*, No. 1-03-3638, at 11-12 (Ill. App. Ct. Mar. 31, 2005). With regard to the first *Strickland* prong, the court found that failure to call Hodges could be attributed to trial strategy, for petitioner's mother had already testified as to his alibi. The court also found petitioner could not establish the existence of substantial prejudice because "defendant's case was not close" and the evidence established petitioner's guilt beyond a reasonable doubt. *Id*. at 12.

In light of the evidence presented at trial, particularly petitioner's confessions, the Illinois appellate court was not unreasonable in finding that petitioner cannot show the existence of substantial prejudice resulting from the alleged ineffective representation. *See Barrow v. Uchtman*, 398 F.3d 597, 606 (7th Cir. 2005) (in light of evidence against petitioner, which included a recorded confession, the Illinois court's ruling on the second

11

*Strickland* prong was not unreasonable).³ Petitioner's attorney conducted lengthy cross-examinations concerning the circumstances of petitioner's confessions, in particular the fact that these were not videotaped or recorded. In closing argument, defense counsel relied on these cross-examinations to argue these confessions had been fabricated or coerced. However, the cross-examinations did not reveal any threats or abuse toward petitioner by the witnesses. Both interviews, which resulted in the confessions, lasted less that two hours combined (one hour for the first interview and less than one hour for the second). Petitioner's confessions were the strongest pieces of evidence against him; accordingly, Hodges's absence does not undermine confidence in the trial outcome as required by *Strickland*. 466 U.S. at 694; *see also Raygoza v. Hulick*, No. 05-2340, -- F.3d --, 2007 WL 184635, at *5 (7th Cir. Jan 25, 2007) (noting weakness of State's case that consisted strictly of eyewitness identification from rival gang members and no confession). Overall, petitioner cannot establish prejudice and is not entitled to relief on claim 1.

Petitioner next claims that his trial counsel was ineffective because she failed to call Antoinette and Nicole Muhammad. The Illinois appellate court made similar findings on this claim as

---

³Because petitioner cannot establish prejudice, I need not determine whether the Illinois appellate court's decision concerning the first *Strickland* prong is reasonable. *See id.* at 605-06 (denying petition despite the fact that the Illinois court's analysis of the first *Strickland* prong was unreasonable).

with claim 1. The court found petitioner could not satisfy either *Strickland* prong. *People v. Ephraim*, No. 1-03-3638, at 9-10 (Ill. App. Ct. Mar. 31, 2005). Specifically, the court held "[i]t is unlikely that the jury would have found Nicole and Antoinette to be credible witnesses," in light of Detective Halloran's testimony concerning these witnesses' refusal to talk to police after the recantations by Miller and Blanch. *Id*. at 9.

I agree with the Illinois appellate court that there were inconsistencies in Antoinette and Nicole Muhammad's statements to police which may have made them appear less credible on the stand, but this alone does not preclude a finding of ineffective assistance of counsel. The fact that family members of the victim would testify for the defense that they did not see petitioner's car at the scene, but instead that of another individual's, would certainly have proven significant at trial. Petitioner's argument fails, however, because the jury did get to hear these potential witnesses' statements. In fact, three witnesses testified that both Antoinette and Nicole Muhammad were relatives of one of the victims and had identified a black, four-door car with gold rims chasing another vehicle. Specifically, Detective Halloran, Jason Miller, and Assistant State's Attorney Lynman relayed these statements to the jury. Defense counsel was able to cross-examine all of these witnesses. The defense also used Lynman's own statements to rehabilitate the Muhammad sisters' credibility during

13

closing argument, by pointing out that Assistant State's Attorney Lynman testified on cross-examination that he did not have verbatim notes of their statements and that he never saw them communicate with Miller or Blanch, as they were kept in opposite sides of the interview room. (Trial Tr. at Q-34.) This suggests not only was it sound strategy for trial counsel not to call them as witnesses for the defense, but that petitioner cannot establish substantial prejudice as well. Accordingly, petitioner is not entitled to relief on claim 2.

### B. Claim 3: Ineffective assistance of appellate counsel for failure to assert ineffective assistance of trial counsel for failure to call Hodges.

Claim 3 has not been through a full round of review in the Illinois courts; therefore it is procedurally defaulted. *O'Sullivan*, 526 U.S. at 845. Specifically, Ephraim raised this claim in his post-conviction petition and appeal, but not in his subsequent petition to appeal to the Illinois Supreme Court. This is necessary in order to ensure federal habeas corpus review. *Id.* at 845-46 (a petitioner must, at minimum, "invok[e] one complete round of the State's established appellate review process" for each of his claims, up to and including the filing of a petition for leave to appeal to the Illinois Supreme Court); *Lewis*, 390 F.3d at 1025. Petitioner's argument to the contrary is a misstatement of the law.

Furthermore, defaulted claims can only be considered if

petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Petitioner has not alleged the existence of cause or prejudice or a fundamental miscarriage of justice here. *See Wilson v. Birley*, 243 F.3d 325, 329 (7th Cir. 2001) (court did not consider ineffective assistance of counsel claim when petitioner did not attempt to show cause or prejudice to avoid procedural default); *Franklin v. Gilmore*, 188 F.3d 877, 884-85 (7th Cir. 1999) (court will not raise fundamental miscarriage of justice on behalf of petitioner to avoid procedural default). Accordingly, I cannot consider the merits of claim 3.

## C. Claims 4-8: Ineffective assistance of post-conviction counsel.

In his response brief, petitioner concedes that "ineffective assistance of post[-]conviction counsel is not cognizable in habeas corpus [review]." (Pet. Res. Br. at 2.) This is correct: in the absence of a constitutional right to post-conviction appellate counsel, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman,* 501 U.S. at 752 (citing *Wainwright v. Torna*, 455 U.S. 586 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance)); *see also Lane v. Richards*, 957 F.2d 363, 365-66 (7th Cir. 1992). Accordingly, petitioner is not entitled to relief on claims 4-8.

IV.

For the above reasons, I deny Ephraim's petition for a writ of habeas corpus.

**ENTER ORDER:**

*[signature: Elaine E. Bucklo]*

Dated: March 14, 2007

**Elaine E. Bucklo**
United States District Judge